**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DANIELLE CORDOVA, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:19-CV-0628 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL, COMMISSIONER | : | |
| OF SOCIAL SECURITY | : | AUGUST 3, 2020 |
|     Defendant. | : | |

**RULING ON PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER (DOC. NO. 14) AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

**I.   INTRODUCTION**

Plaintiff Danielle Cordova ("Cordova") brings this action under title 42 of section 405(g) of the United States Code, appealing the final determination of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits and supplemental security income.  Motion to Reverse the Decision of the Commissioner ("Pl. Mot.") (Doc. No. 14).  Plaintiff moves this court to reverse the decision of the Commissioner or, in the alternative, remand the case for a hearing.  See id. at 1.  The Commissioner cross-moves for an order affirming that decision.  See Motion to Affirm the Decision of the Commissioner ("Def. Mot.") (Doc. No. 15).  Also pending before the court is Cordova's Motion for Leave to file a statement of facts in excess of the 20-page limit (Doc. No. 14-3).

For the reasons stated below, the Motion to Reverse the Decision of the Commissioner (No. 14) is granted and the Commissioner's Motion to Affirm (Doc. No. 14) is denied.  Furthermore, Cordova's Motion for Leave (Doc. No. 14-3) is granted.

1

## II. BACKGROUND

### A. Facts

Cordova, who is now a 46-year-old woman, resides in East Haven with her husband and one of her five children. Administrative Record ("AR") (Doc. No. 10) at 42. She previously worked as a certified nurse assistant, but she is currently unemployed. AR at 44.

Cordova suffers from several health conditions including varicose veins, anemia, obesity, neck pain, and migraine headaches caused by a benign brain tumor. Since at least April 7, 2015, Dr. Louis Telesford has been Cordova's primary care physician and has treated some of Cordova's conditions. AR at 377-78. Dr. Telesford treated Cordova's anemia with vitamin B12 injections and prescribed Fioricet for Cordova's headaches. See, e.g., 387, 402, 408. On October 14, 2016, Dr. Telesford ordered an MRI of Cordova's brain. AR at 402. The scan, conducted on October 25, 2016, revealed a benign tumor. AR at 536, 410. Her headaches continued on a regular basis throughout 2016 and into early 2017. See 478. By spring 2017, Cordova's headaches began to occur with less frequency and intensity. On March 15, 2017, Cordova reported that her headaches had "much improved" with exercise and medication. AR at 483. Cordova made similar reports throughout the remainder of medical record. See AR at 434, 475, 445, 427, 663, 675, 877.

Cordova also suffers from varicose veins. On March 23, 2015, following a consultation with vascular surgery, Cordova was ordered to undergo an ablation and to be fitted for compression stockings. AR at 350. On May 11, 2015, Cordova underwent lower extremity ablation. See AR at 351. The following year, on March 28, 2016,

2

Cordova reported to a vascular surgeon a left thigh pain that had occurred since the ablation and was believed to be related to her varicose veins. See AR at 352. Cordova reported that "she had not been using compression therapy, and is on her feet throughout the day as a result of her work as a visiting nurse and a mother of 5." AR at 352. She was treated for her varicose veins again on September 14, 2018. See AR at 901.

To treat her neck pain, Cordova began physical therapy on March 21, 2017, and reported a pain level of three out of ten. See AR at 473. She attended several sessions throughout the spring and early summer of 2017. See AR 467, 462, 453. She reported occasional neck pain but demonstrated improved range of motion. See AR at 443, 437, 453. On July 24, 2017, she was discharged with "[n]o further expectation of functional progress." AR at 429. She resumed physical therapy on February 28, 2018, see AR at 683, but was discharged again on May 4, 2018 for lack of attendance, see AR at 823.

On July 27, 2018, Cordova visited the Emergency Department and complained of "arm and right leg numbness since starting aqua therapy." AR at 877. During that visit, Cordova reported that she had been doing jumping jacks, squats and lifting, and she denied headaches. AR at 877. A cervical spine x-ray showed a "mild narrowing of the C3-C4 bony left neural foramen," but was "otherwise [a] normal exam." AR at 880. She was sent home and directed to follow up with her primary care physician. AR at 880.

During an August 6, 2018 appointment with Dr. Telesford, Cordova's primary care physician, Dr. Telesford noted that Cordova was "doing well" and that her physical examination findings were unremarkable. AR at 861–62. Cordova visited Dr. Telesford later that month, on August 22, 2018, following a jet ski accident. AR at 864–66.

3

Cordova reported that she had fallen and hurt her knee while stepping off the jet ski and onto the dock. AR at 864. An x-ray of her knee did not show any abnormality. See AR at 892. The last treatment note from Dr. Telesford relates to a September 12, 2018 visit. See AR at 867. Dr. Telesford reported that Cordova denied having headaches and that her physical examination findings were unremarkable. See AR at 867–69

B.   Procedural history

On September 28, 2017, Cordova filed an application for Disability Insurance Benefits and Supplemental Security Income Benefits. AR at 228, 232. These claims were denied on February 6, 2018, and upon reconsideration, on June 25, 2018. AR at 125, 178. Cordova then filed a written request for hearing on June 28, 2019. AR at 187. A hearing was held on December 4, 2018, in New Haven, Connecticut before Eskunder Boyd, Administrative Law Judge ("ALJ"). AR at 34. Cordova appeared at the hearing pro se and testified. A vocational expert ("VE") also testified.

Follow this hearing, the ALJ, in a written decision, concluded that Cordova was not disabled within the meaning of the Social Security Act. See AR at 27. The ALJ found that Cordova had severe impairments of a horizontal tear of right meniscus, C3-4 herniation, T12-L1 degenerative disc disease, anemia, fourth ventricle mass with migraine headaches, varicose veins, and obesity. AR at 19. The ALJ concluded that Cordova has the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> [S]he requires a sit/stand option defined as sitting for 30 minutes, alternate to the standing position for five minutes, and then resume sitting. She may never climb ladders, ropes, or scaffolds but may occasionally climb stairs and ramps, balance, stoop, and crouch but never kneel or crawl. She may frequently handle and finger with her left hand, but has no limitations with

    the right dominant hand. She should not work in exposure to cold or wetness.

AR at 21. The ALJ then found that Cordova was unable to perform her past relevant work, but that she would be able to perform other occupations that exist in substantial numbers in the national economy. AR at 26.

    Cordova filed a Request for Review by the Appeals Council, which was denied on March 4, 2019. AR at 88. Cordova subsequently filed this appeal.

## III.    STANDARD

    To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ follows a five-step evaluation. At the first step, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If not, the Commissioner proceeds to the second step and considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities. If the claimant has a "severe impairment," the Commissioner proceeds to step three and asks whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. See 20 C.F.R. § 416.920(a)(4). If the claimant has one of these enumerated impairments, the Commissioner will automatically consider that claimant disabled, without considering vocational factors such as age, education, and work experience. Id. If the impairment is not "listed" in the regulations, the Commissioner proceeds to step four and asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity ("RFC") to perform his or her past work. At step five, the Commissioner determines whether there is other work the claimant could perform. Id. To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work

but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Commissioner bears the burden of proof on the fifth step, while the claimant has the burden on the first four steps. See 20 C.F.R. § 416.920(a)(4).

A court must uphold a final SSA determination to deny benefits unless that decision is unsupported by substantial evidence or is based on an incorrect legal standard. See 42 U.S.C. § 405(g); see also Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). "Substantial evidence" requires "more than a mere scintilla of evidence. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

## IV. DISCUSSION

In her Memorandum, Cordova argues that the ALJ failed to adequately develop the record and that the ALJ erred in his RFC determination at step four. Id. at 7, 9. Cordova also argues that the ALJ erred at step five by failing to assist the claimant in developing the vocational evidence and relying on the vocational expert's testimony. Id. at 13.

The court begins with the first issue Cordova raises: adequate development of the record. An ALJ in a social security benefits hearing has an affirmative obligation to develop the record adequately. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999). This obligation is "heightened" when, as here, the claimant is proceeding pro se. See Prince v. Berryhill, 304 F. Supp.3d 281, 287 (D. Conn. 2018) (citing Echevarria v. Secretary of HHS, 685 F.2d 751, 755 (2d Cir. 1982)). Whether the ALJ has satisfied this duty to develop the record is a threshold question. Before determining whether the

Commissioner's final decision is supported by substantial evidence under section 405(g) of title 42, "the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." Scott v. Astrue, 09-CV-3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (internal quotations omitted).

Cordova argues that the ALJ failed to adequately develop the record in two respects (1) he failed to include opinion evidence from Cordova's medical sources and (2) he failed to fill other "gaps in the medical evidence." Pl. Mem. at 2, 7-9. As to the first point, the Second Circuit has held that, where "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." Monroe v. Comm'r of Soc. Sec., 676 Fed. Appx. 5, 8 (2d Cir. 2017) (summary order) (citing Tankisi v. Comm'r of Soc. Sec., 521 Fed. Appx. 29, 34 (2d Cir. 2013)).

In this case, the ALJ considered the treatment notes of Cordova's medical providers dating back to before the onset date of January 11, 2015. For example, the ALJ reviewed records from Yale New Haven Hospital reported that Cordova's headaches were occurring with less frequency and were being managed with medication. See, e.g., AR at 675. Although these records also reflect neck and shoulder pain, along with decreased dexterity, the records report no restriction on Cordova's neck on range of motion testing. See, e.g., AR at 686, 888. Records from Cordova's physical therapy indicate that Cordova could move well through her exercises and had improved range of motion in her spine. See AR at 453, 456, 646. The ALJ reviewed the medical records from Dr. Telesford, Cordova's primary care

physician, who helped Cordova treat her anemia condition, headaches, and neck pain. The ALJ also considered progress notes from several other treatment providers, see AR at 31, results of X-Ray and MRI testing, see AR at 23, and reports of consultative examiners, see AR at 32. The ALJ also considered Cordova's testimony and her well-documented daily activities and social functioning. See AR at 22. Absent from the record, however, was a medical source statement from any of Cordova's treating physicians.

Furthermore, although the ALJ "consider[ed] the State agency mental and physical residual functional capacity assessments," he found them each to be "unpersuasive" because he viewed them as "not consistent with the evidence in the record." AR at 24. "[A] large body of case law hold[s] that an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." Staggers v. Colvin, 2015 WL 4751123, at *2 (D. Conn. Aug. 11, 2015) (collecting cases). Although the ALJ's RFC determination need not match a medical opinion, see Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (summary order), the opinion of a medical expert was needed in this case to determine Cordova's RFC. "This is not the case where plaintiff suffers relatively little physical impairment such that the ALJ may render a common sense judgment about Plaintiff's functional capacity." Dowling v. Saul, No. 19-CV-1170 (WIG), 2020 WL 2079113, at *5 (D. Conn. Apr. 30, 2020). "The ALJ acknowledged as much by designating as 'severe' [Cordova's impairments]." Id.; see also AR at 19 (finding seven severe impairments). Because the ALJ did not have any opinion evidence on which he relied, and because he did not have any treating

physician opinions, the court cannot determine whether the RFC is supported by substantial evidence.

The Commissioner responds that, because the ALJ can determine the RFC from treatment notes, the record need not include a formal medical opinion. See Defendant's Memorandum in Support ("Def. Mem.") (Doc. No. 15-1) at 8 (citing Monroe v. Colvin, 676 F. App'x 5, 8-9 (2d Cir. 2017)). However, important gaps exist in those treatment notes. As to Cordova's ability to ambulate, the Commissioner notes that the ALJ's RFC is supported by substantial evidence because Cordova's "treatment notes repeatedly reflect that she had normal gait and did not use any assistive devices." Def. Mem. at 15. The treatment notes that the Commissioner cites, however, each predate Cordova's August 2018 accident where she injured her right knee. Further, Cordova testified during the December 2018 hearing that she had recently been prescribed a cane. See AR at 43. Cordova testified that the cane was needed to treat the torn meniscus in her right knee, id., an impairment that the ALJ classified as "severe," AR at 19. There are no treatment notes from the month preceding the hearing – the period during which Cordova testified that she had been prescribed the cane. Indeed, the last treatment note from her primary care physician is from September 13, 2018. See AR at 867. The record also indicates that Cordova had a referral to Rehabilitation Services, made on November 26, 2018, for treatment of her right knee patellofemoral pain. AR at 913, 916. Neither the notes from Cordoba's rehabilitation appointment, nor the visit at which the referral was made, are in the record.

Given Cordova's testimony regarding her prescribed cane, and given the medical evidence demonstrating a severe impairment, the record should have included a

9

medical source statement that commented on Cordova's ability to ambulate and the need for a cane. See Jones v. Berryhill, No. 16-CV-6540, 2018 WL 4158317, at *6 (E.D.N.Y. Aug. 30, 2018) ("If the ALJ doubted Jones's credibility due to the absence of medical evidence [indicating the need for a cane], he should have consulted with her physicians. The ALJ was in no position to decide one way or the other because, as noted, ALJs cannot rely on negative evidence to form a lay opinion."); see also Valentine v. Comm'r of Soc. Sec., No. 18-CV-3985, 2019 WL 3974576, at *17 n.10 (E.D.N.Y. Aug. 21, 2019) ("Although there is no medical evidence currently in the record establishing the need for a cane, Dr. Trimba's one-time observation that Plaintiff does not appear to need a cane does not conclusively address whether Plaintiff's cane is necessary. The ALJ should seek to obtain evidence from Plaintiff's treating physicians with respect to whether or not his cane is necessary."). Because the record does not contain an RFC assessment from Cordova's treating physicians, and because the record contains other important gaps involving this severe impairment, the ALJ failed to adequately develop the record. See id.; see also Jones, 2018 WL 4158317, at *6.

The failure to adequately develop the record as to Cordova's ability to ambulate was not harmless error. In the ALJ's decision, the ALJ relied on the vocational expert's testimony that a hypothetical individual with Cordova's RFC could work as a document preparer, sorter, and addresser. See AR at 26. However, during the hearing, the vocational expert noted that these jobs could not be performed if that hypothetical individual required a cane. See AR at 61. Therefore, contrary to the Commissioner's assertion, this is not the case in which the claimant cannot explain how the inadequate record "would have affected [the] case." Def. Mem. at 9-10 (citing Reices-Colon v.

Astrue, 523 F. App'x 796, 799 (2d Cir. 2013)).  Had an adequately developed record demonstrated that Cordova required the use of a cane to ambulate, substantial evidence would not support the ALJ's step five determination.  For this reason, the court cannot review whether the ALJ's disability determination is supported by substantial evidence.  See Alvarez v. Comm'r of Soc. Sec., No. 14-CV-3542 (MKB), 2015 WL 5657389, at *18 (E.D.N.Y. Sept. 23, 2015) ("Where, as here, an ALJ fails to adequately develop the record in reaching a conclusion on a claimant's residual functional capacity, the Court is unable to review whether the ALJ's denial of benefits was based on substantial evidence.").

Remand for further development of the record is warranted.  See Hallett v. Astrue, 2012 WL 4371241, at *7 (D. Conn. Sept. 24, 2012) ("Where the ALJ fails to fulfill the duty to develop the record, the reviewing district court should reverse the Commissioner's decision and remand the appeal from the Commissioner's denial of benefits for further development of the evidence.").  On remand, the ALJ should adequately develop the record as to Cordova's ability to ambulate, including the addition of treatment notes from Rehabilitation Services, see Pl. Mem. at 9, and other treatment notes following Cordova's August 2018 knee injury.[1]

---

[1] Although a medical source statement is not required, see Pellam v. Astrue, 508 F. App'x 87, 90 (2d Cir. 2013), if Cordova was indeed prescribed a cane, the record would greatly benefit from a medical opinion as to Cordova's RFC.

Cordova also directs the court's attention to other gaps in the record, including missing treatment notes from a cardiovascular procedure.  See Pl. Mem. at 9.  On remand, the ALJ should include these notes in record, as well.

## V.     CONCLUSION

For the reasons stated above, the Motion to Reverse the Decision of the Commissioner (No. 14) is granted and the Commissioner's Motion to Affirm (Doc. No. 15) is denied.  Furthermore, Cordova's Motion for Leave (Doc. No. 14-3) is granted. The case is remanded to the Social Security Administration for further proceedings consistent with this Ruling.

**SO ORDERED.**

Dated this 3rd day of August 2020 at New Haven, Connecticut.

      /s/ Janet C. Hall
Janet C. Hall
United States District Judge